ALLEGANY COUNTY.—HON. C. A. FARNUM, SURRO GATE.—November, 1884.

TOMPKINS v. FANTON.

*In the matter of the judicial settlement of the account of DAVID FANTON, as executor of the will of ESTHER FANTON, deceased.*

The testator of testatrix, by his will, gave to the latter "all my (his) real estate of every name and nature, whatsoever, and all my (his) personal estate, goods and chattels of every kind, together with all book accounts and debts due, etc., and also a lawful right to buy and sell and dispose of a part or all of the above mentioned real estate, personal property, goods and chattels, as long as she retains her sound mind, and is capable of doing business and is not insane, during her natural life;" and, after her death, all the rest, residue and remainder of the estate "which is above willed and bequeathed to my (his) wife" to another and his heirs and assigns.—

*Held*, that this provision expressly created a life estate in testatrix, with a power of disposition during her life; that so much of the personalty as remained undisposed of at the time of her death constituted no part of her estate; and that the executor of her will was not bound to account therefor.

Cases where a will bestows property without specifying the nature of the
estate, and gives to the donee a power of disposition—distinguished.

CONSTRUCTION of the will of the testator of decedent, upon the judicial settlement of the account of the executor of the will of the latter. The facts appear in the opinion.

H. L. JONES *and* B. C. RUDE, *for executor.*

HAMILTON WARD *and* IRA MYERS, *for Lydia A. Tompkins and others, legatees.*

THE SURROGATE.—The chief controversy in this accounting has been whether the executor should account for all the personal property in the possession of the testatrix at the time of her death, or for that only which came to her otherwise than by the will of her husband, Daniel Fanton. Counsel for the legatees claim that the testatrix became the absolute owner of all the property bequeathed to her by the will of said Daniel, while counsel for the executor contend that she took a life estate only, and that, upon her death, it passed to the executor herein, David Fanton.

Esther Fanton devised all her real property to David Fanton, and bequeathed all her personal property to her sisters, the legatees who are now objecting to the account of the executor as rendered. The will of Daniel Fanton was duly admitted to probate by the Surrogate of Steuben county, June 5th, 1866, and this controversy arises over the following clauses contained therein:

"*First.* I give and bequeath to my wife, Esther Fanton (the testatrix herein), all my real estate, of

every name and nature whatsoever, and all my personal estate, goods and chattels of every kind, together with all book accounts and debts due, etc., and also a lawful right to buy and sell and dispose of a part or all of the above mentioned real estate, personal property, goods and chattels, as long as she retains her sound mind, and is capable of doing business and is not insane, during her natural life. And after her death I will and bequeath to my nephew, David Fanton, (the executor herein), and his heirs and assigns, all the rest, residue and remainder of my real estate, goods and chattels, book accounts, debts due, of whatsoever kind or nature, and personal estate, which is above willed and bequeathed to my wife, Esther Fanton. I request and bind said David Fanton to pay all my lawful debts against the estate, and also ten dollars' to the ten lawful heirs, that is to say, one dollar to (naming each of ten persons), which is to be paid when coming in possession of the estate, and I hereby appoint my nephew, David Fanton sole executor of this my last will and testament."

Although this will is quite inartistic there is no serious difficulty in ascertaining the intent of the testator. He gave his wife Esther, *in express terms*, his real and personal estate *for life*, with a power of disposition during life, or so long as she was of sound mind, and, upon her death, the property undisposed of by her passed to David. It would not be claimed in this case that Esther Fanton took more than a life estate under the will of Daniel Fanton, if the will had not given her the power to dispose of the property, for it is expressly stated that the property is given to

her " during her natural life " with "a lawful right to buy and sell and dispose of a part or all, so long as she retains her sound mind, and is capable of doing business, and is not insane."

Redfield says : " A power of sale attached to an express life estate will not have the effect to enlarge it to a fee" (2 Redf. on Wills [2nd ed.], 345). " Where property, whatever be its nature, is expressly limited to the first taker for life, there is not, it is believed, any case in which such expressions have been held to render the ultimate gift void" (1 Jarman on Wills [R. & T.], 654). Cruise, in his Digest of Real Property (vol. 6, p. 279, N. Y. ed., 1834), says : "Although a devise to a person generally, with a power to give and dispose of the estate devised as he pleases, creates an estate in fee simple, yet when an estate is devised to a person expressly for life, with a power of disposal, the devisee will only take an estate for life, with a power to dispose of the reversion."

From the numerous authorities cited and examined on this hearing, I think the following rule can be extracted, viz. : That, where property is willed without specifying the nature of the estate, and the donee is given a power of disposition, the latter takes the absolute title to the property, but where the donee takes an estate expressly for life, with a power of disposal, during life, he takes a life estate only, and whatever is left of that estate at the time of the death of the life tenant, passes to the remainderman. This principle is elementary and has been acted upon fre-

quently of late years by our courts, although the rule itself has been rarely stated.

In the case at bar, Esther Fanton took her estate in express terms *for life,* with a power of disposition so long as she lived or was of sound mind, but she is not given the right to make a testamentary disposition of the property received by her under the will of Daniel Fanton. " So if an estate be given to a person generally, or indefinitely, with a power of disposition, it carries a fee ; unless the testator gives to the first taker an estate for life only, and annexes to it a power of disposition of the reversion. In that case, the *express* limitation *for life* will control the operation of the power, and prevent it from enlarging the estate to a fee (4 Kent, 319, 536).

In Candler v. Candler (2 *Dem.*, 124), Mrs. Candler was given a certain sum " to have and to hold for her separate use during her natural life, and to be disposed of by her at her death among her lawful issue in such proportions as she shall direct and appoint. But if she shall die without making such appropriation, then I direct the same to be divided among such issue, in the same proportion as if it had been her property at the time of her death." Mrs. Candler contended that the bequest to her was absolute, but the court held that she took a life estate only, subject to the power of disposal by will among her issue.

Colt v. Heard (10 *Hun*, 189) contained these provisions : " I give and bequeath and devise, all the rest, residue and remainder of my estate, real and personal and wheresoever situate unto my beloved

husband, Thomas Scott; but such part thereof as he may have at the time of his decease I give, devise and bequeath unto my niece Mary Louise Ledyard," etc. It was there held that the intent of the testatrix was that her husband should enjoy the full benefit which he could derive from the estate willed to him, while he lived, and such of it as was left at his decease should go to the relatives of the testatrix, as stated in her will. See, also, Terry v. Wiggins (47 *N. Y.*, 512). Campbell v. Beaumont (91 *N. Y.*, 464) does not infringe upon the proposition above stated, for in that case the property disposed of by will to the widow was not in express terms given to her for life. It was given to her *generally*, without any words of qualification or limitation.

In Stuart v. Walker (72 *Maine*, 145; *S. C.*, 2 *Am. Prob. R.*, 79), the testator's will contained these provisions: "I give, devise and bequeath unto my wife, Mary Berry, all the rest and residue of my estate, real and personal, of what kind soever and wherever situate, with the right to use, occupy, lease, exchange, sell or otherwise dispose of the same, and the increase and income thereof, according to her own will and pleasure during her lifetime, meaning and intending hereby that the said Mary Berry, during her lifetime, shall have the absolute right, power and authority to use and dispose of, by sale or otherwise, all said devised estate, real and personal, for her own support and for any and all other purposes to which she may choose to appropriate it. And so much of said estate, so devised to my said wife, together with the increase, income and proceeds thereof,

as may remain unexpended and undisposed of by her at her decease, I give, devise and bequeath unto the said Frances L. Sargeant, her heirs and assigns forever, if she shall be then living; and if not living, then to such children or child of said Frances as may be living at that time." The court unanimously held that the widow took a life estate only, and upon her death the property passed to the residuary legatee and devisee. The authorities bearing upon this question are here very fully discussed and collected, and the court say: "In no case in this State has it been directly or indirectly held that, where there is a devise for life in *express terms*, a power of disposal annexed can enlarge it to a fee."

From all the cases examined, I am satisfied that the testatrix herein had no power to dispose of, by will, the property which came to her through the will of Daniel Fanton.

From the testimony given before me upon this accounting, I am satisfied that Esther Fanton died possessed of personal property which came from means of her own, received from other sources than from her deceased husband, amounting to upwards of $1,200. For this the executor has not accounted. He should be charged with this, and the avails thereof distributed to the sisters of the testatrix, and to the representatives of the two sisters deceased since these proceedings were instituted.

The contestants have failed in part, and succeeded in part, in their claim. No bad faith can be imputed to the executor in the position he assumed. Neither party should be charged with costs as against the other. A decree should be entered accordingly.